# EXHIBIT A

DANIEL M. ROSENBERG &
ASSOCIATES, LLC
By:   Daniel M. Rosenberg, Esquire
Attorney Identification No.: 015522003
141 High Street
Mount Holly, New Jersey 08060
(609) 216-7400 (telephone)
(609) 207-3767 (facsimile)
www.danielmrosenberg.com

THE KIM LAW FIRM, LLC
By:   Richard H. Kim, Esquire
        Lisa A. Buckalew, Esquire
Attorney ID Nos. 010412005/021231996
911 Arch St., Suite 101
Philadelphia, PA  19107
Ph. 855-996-6342/Fax 855-235-5855
Email: rkim@thekimlawfirmllc.com
        lbuckalew@thekimlawfirmllc.com

Attorneys for Plaintiff, Richard Stanhope

SUPERIOR COURT OF NJ
Burlington County

MAR 1 8 2016

RECEIVED

| | |
|---|---|
| Richard Stanhope | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| Plaintiff, | BURLINGTON COUNTY |
| | DOCKET NO.: C-110-14 |
| v. | |
| | CIVIL ACTION |
| Bank of America, N.A., Deborah Carter | |
| Frake, Harry Frake, III, John and Jane Doe | |
| 1-5, AND ABC Corps, 1-5. | VERIFIED THIRD |
| | AMENDED COMPLAINT |
| Defendants. | |

Plaintiff, Richard Stanhope, by way of Verified Third Amended Complaint against the

Defendants, Bank of America, N.A., Deborah Carter Frake and Harry Frake, III, avers the

following:

## INTRODUCTION

1.      Plaintiff, Richard Stanhope, sustained serious injuries from being struck by a

motor vehicle on or about January 5, 2009.  As a result of the accident, Mr. Stanhope is now

paralyzed and blind.

2.      A personal injury lawsuit was initiated, and Mr. Stanhope received approximately $343,000.00 (the "Settlement Funds") in settlement of the matter.

3.      These funds were meant for, among other things, to assist Mr. Stanhope with living and medical costs throughout his lifetime – he is only twenty-six (26) years old.

4.      However, approximately $300,000.00 (and possibly more) of the Settlement Funds were stolen by Defendants, Deborah Carter Frake ("D. Frake", Mr. Stanhope's mother) and Harry Frake, III (Mr. Stanhope's step-father) ("H. Frake", with D. Frake collectively referred to hereinafter as the "Frakes").

5.      Indeed, the Frakes took advantage of Mr. Stanhope's physical disabilities, and stole hundreds of thousands of dollars from him.

6.      The Frakes not only stole money directly from Mr. Stanhope's bank accounts through the use of a debit card at money access machines, but they used that same card to shower themselves with lavish shopping sprees.

7.      The very funds that were stolen - meant to sustain Mr. Stanhope through the rest of his young life - are now gone.

8.      The Frakes were able to accomplish their ongoing theft of Mr. Stanhope's funds because he is blind, and was unable to review his monthly bank statements.  He would ask his mother his bank balance, and she would lie.

9.      BOA is culpable because it violated the Americans with Disabilities Act and the New Jersey Law Against Discrimination by failing to reasonably accommodate Mr. Stanhope, who is blind, by providing him with auxiliary aids to review and understand the terms of his bank accounts and to his monthly bank statements.  As a result of BOA's failure to accommodate

Mr. Stanhope, he was unable to monitor his bank accounts and he fell victim to the Frakes, who raided his bank account for a significant period of time without his knowledge.  This could have been prevented or stopped if the Bank provided him with the auxiliary aids that he needed.

10.     What's more, Bank of American, N.A. ("BOA") wrongfully: (i) breached its contracts with Mr. Stanhope, (ii) breached its promises to Mr. Stanhope, upon which he relied, (iii) was negligent; (iv) breached the implied covenants of good faith and fair dealing; and (v) breached its fiduciary duty, by, among other things, failing to take appropriate measures to protect Mr. Stanhopes banks accounts (especially given his disabilities); monitor Mr. Stanhope's bank accounts; enforcing their own policies and procedures to prevent the very fraud that occurred from occurring, and continuing to occur; and/or enforcing their own policies and procedures relating to client reimbursement for victims of fraud.

11.     By way of example, and without limitation, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA checking account.  However, the Frakes regularly utilized automated money access machines ("ATM") to withdraw cash from Plaintiff's BOA account in excess of the $1,000.00 daily withdrawal limit established by BOA and applicable to Plaintiff's account.  The redacted banking statements for Mr. Stanhope's BOA checking account are attached hereto as "**Exhibit A**".

12.     If BOA had provided Mr. Stanhope with audio tapes of his monthly bank statements or other auxiliary means of reviewing his statements, he would have had the opportunity to discover the Frakes' misconduct shortly after it first occurred and put an end to it. Instead, it went on for a long period of time, without Mr. Stanhope's knowledge.

13.     Moreover, when BOA was put on notice of the fraud in or around February 2014, upon information and belief, it failed to investigate the claims made by Mr. Stanhope – thereby

3

negligently failing to adhere to procedures regarding reimbursing banking customers for unauthorized use of their accounts - and forced Mr. Stanhope to leave the Mount Holly, New Jersey BOA branch with threat of prosecution from law enforcement.

14.     Accordingly, Plaintiff has instituted this action for equitable and financial relief as a result of Defendants' wrongdoing, as set forth in more detail below.

## PARTIES

15.     Plaintiff, Richard Stanhope, is an individual having a residence at 85 Madison Ave., Mount Holly NJ 08060.

16.     Defendant BOA is a banking entity registered in Delaware, with a principal place of business located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

17.     Defendant, Deborah Carter Frake is the Plaintiff's mother, and she resides at 47 Mount Holly Avenue, Mount Holly, New Jersey.

18.     Defendant, Harry Frake, III is the Plaintiff's step-father, and resides at 47 Mount Holly Avenue, Mount Holly, New Jersey.

## JURISDICTION

19.     The acts and wrongdoing alleged herein occurred in the State of New Jersey, and almost entirely in Burlington County.

20.     Richard Stanhope, Deborah Carter Frake, and Harry Frake, III, reside in Burlington County, New Jersey.

21.     BOA conducts business within Burlington County, New Jersey.

22.     The BOA branch location through which Mr. Stanhope managed his accounts is located in Burlington County, New Jersey.

4

23.     A significant portion of the stolen Settlement Funds, if not the entire amount, upon information and belief, was spent in or around Burlington County, New Jersey.

## FACTS

### Settlement Proceeds

24.     Following Mr. Stanhope's motor vehicle accident in 2009, he received approximately $343,000.00 in settlement proceeds (the "Settlement Funds") in or around October, 2012.

25.     The Settlement Funds were then deposited into a BOA bank checking account (the "BOA Checking Account") for safekeeping.

26.     Of the $343,000.00 in Settlement Funds, Mr. Stanhope transferred approximately $155,013.30 to a BOA Savings Account (with the BOA Checking Account, collectively, the "BOA Accounts"). Redacted statements for the BOA Savings Account are attached hereto as "Exhibit B".

27.     At all times relevant hereto, Mr. Stanhope consulted with BOA regarding his BOA accounts, and BOA was well aware of his disabilities (including his blindness and paralysis). Mr. Stanhope relied upon BOA's advice regarding his accounts.

28.     When the BOA Checking Account balance started to run low, however, the Frakes gained access to the BOA Savings Account and transferred funds on numerous occasions, each time in significant increments of approximately $15,000.00, without Mr. Stanhope's permission.

29.     Not only was BOA negligent for not preventing the aforementioned continuous transfers to occur from Plaintiff's BOA Accounts, upon information and belief, there were policies and procedures in place that should have prevented such large sums of money from being transferred between accounts.

30.     BOA was also negligent for failing to reasonably accommodate Mr. Stanhope, who is blind, and to provide him with auxiliary aids to enable him to review his monthly bank statements, so that he could monitor his accounts and stop and prevent fraud from occurring.

31.     The funds in the BOA Accounts were intended to assist with medical and living costs for the duration of Mr. Stanhope's life.

32.     Mr. Stanhope is currently 26 years old.

## The Frakes' Use of the Funds

33.     Since receiving the Settlement Funds, the Frakes, Plaintiff's parents, have never had any meaningful employment.

34.     The only known source of income for either of the Defendants is social security benefits received by Harry Frake, III ("H. Frake"), which is only a recent occurrence.

35.     Since Mr. Stanhope received the Settlement Funds, or shortly thereafter, the Defendants have been fraudulently siphoning off funds from the BOA Account.

36.     The Frakes' used the debit card (the "Debit Card") associated with the BOA Account to withdraw cash - sometimes up to $3,000.00/day – from various ATM machines.

37.     The Debit Card was also used for shopping sprees at retailers such as BJ's Wholesale Club, Walmart and the Columbus Farmers Market - to name a few.  Sometimes, a thousand ($1,000.00) dollar a day would be spent at these vendors.

38.     The Debit Card was held in trust by Mr. Stanhope's mother for very specific negligible uses – such as purchasing shampoo and soap, and paying household utilities since the parties shared the same residence.

39.     Mr. Stanhope specifically gave his mother, D. Frake, permission in each instance for the use of the Debit Card for a specific limited purpose.  In other words, neither of the Frakes

6

had *carte blanche* authority for the use of the Debit Card – far from it.

40.    In or about February 2014, Mr. Stanhope discovered the wrongdoing by the Frakes, which resulted in the theft of approximately $300,000.00.

41.    In total, Mr. Stanhope was only left in total with approximately $43,000.00 between the BOA Accounts.

<u>**Defendant BOA**</u>

42.    During the same time period that the Frakes raided Mr. Stanhope's account, from approximately October 2012 through February 2014, BOA was entrusted with the Settlement Funds, but breached its duties, failed to exercise due care, and was negligent by, among other things, allowing the Frakes' wrongful conduct to continuously occur.

43.    Indeed, BOA displayed gross negligence and failed in its duties, responsibilities, promises and contractual obligations to Mr. Stanhope by, among other reasons, completely failing to institute and/or follow policies and procedures to guard against the very fraud that occurred, especially given Mr. Stanhope's physical disabilities.  BOA was also negligent in failing to reasonably accommodate Mr. Stanhope, who is blind, and to provide him with auxiliary aids to enable him to review his monthly bank statements, so that he could monitor his accounts and stop and prevent fraud from occurring.

44.    For example, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA Checking Account.  However, BOA regularly breached its promise to Plaintiff - that a daily withdrawal limit of $1000 would be placed on the BOA Checking Account - and allowed the Frakes to repeatedly withdraw cash from this Account in excess of the $1,000.00 limit at various ATMs, as reflected in "**Exhibit A**".

45.    Moreover, these transactions were accruing significant fees, which should have

further alerted BOA that the activity that was occurring was irregular and fraudulent.

46.     But for BOA's wrongful conduct, the losses sustained by Mr. Stanhope could have been significantly diminished or prevented very early.

47.     BOA further breached its promises to Mr. Stanhope, relating to transfer of funds between bank accounts.  BOA promised to limit transfers from the BOA Savings Account to other BOA accounts, including checking accounts, in an amount less than $15,000.  Despite this assurance, BOA allowed the Frakes to transfer $15,000.00 at a time from Mr. Stanhope's BOA Savings Account to his BOA Checking Account.  Such activity should have alerted BOA that irregular and fraudulent activity was occurring.

48.     Further, if there were no policies and procedures instituted by BOA to limit transfers between bank accounts, such a failure would have also been negligent and a breach of its fiduciary duties to Mr. Stanhope, which could have limited the extent of the Frakes' wrongdoing.

49.     When Mr. Stanhope did learn of the Frakes' wrongful conduct, he notified BOA employees at its Mount Holly, New Jersey branch.

50.     In line with BOA's improper behavior, when its representatives were notified, they failed to properly investigate the loss, did not follow-up with Mr. Stanhope to acquire additional information, and refused to provide him with BOA materials that he requested, including, but not limited to, initial account opening information setting forth the limits on his BOA Checking Account and BOA Savings Account.

51.     BOA operated in bad faith, and its wrongful conduct was flagrantly in breach of its promises, duties and obligations by, among other reasons, failing to follow its own guidelines, implementing common sense by not questioning the bizarre, peculiar and irregular transactions

8

that were occurring with Mr. Stanhope's BOA Accounts, and/or instituting basic procedures to protect him.

**COUNT ONE**
**FRAUD – INJUNCTIVE RELIEF AGAINST DEBORAH CARTER FRAKE AND HARRY FRAKE, III**

52.     Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

53.     At all times the Frakes were in possession of the Debit Card, Mr. Stanhope never provided permission to use the card at any retailer, or withdraw any money from the related BOA Accounts.

54.     At all times the Frakes used the Debit Card fraudulently at various retailers, both in person, and online.

55.     The Frakes use of the Debit Card to access cash, or purchase goods, was without Mr. Stanhope's permission.

56.     The Frakes use of the Debit Card at any ATM machine was without Mr. Stanhope's permission, and was fraudulent.  The Frankes' actions were intentional, malicious, and in willful disregard of Mr. Stanhope's rights.

WHEREFORE, Plaintiff demands judgment against the Defendants Deborah Carter Frake and Harry Frake, III (the Frakes), jointly and severally as follows:

a.   Mandatorily enjoining and restraining the Frakes, and any other individuals except the Plaintiff and Court appointed individuals from entering into the premises located at 47 Mount Holly Ave., Mount Holly, NJ, until further Order of this Court;

b.   Mandatorily enjoining and restraining the Frakes, and any other individuals except

the Plaintiff and Court appointed individuals from entering onto any part of the Smart Cube located at 1817 US Route 38, Lumberton, NJ 08048, until further Order of this Court;

c.  Mandatorily enjoining and restraining the Frakes, and any other individuals except the Plaintiff and Court appointed individuals from contacting Bank of America, until further Order of this Court;

d.  Mandatorily enjoining and restraining the Frakes, and any other individuals except Court appointed individuals from transferring, selling and/or changing title to any property and/or goods in their possession, until further Order of this Court;

e.  Mandatorily enjoining and compelling the Frakes to provide an accounting of all assets, real property and goods within their possession, including, but not limited to: cash, stock, bonds, furniture, dolls, stuffed animals, or any item that could be considered a collectible.

f.  Appointment of a Court designated receiver, accompanied by a member of the New Jersey State Police, County Sheriff's Office, municipal police officer, or any other such public safety official, if necessary, to access and account for all assets, property, bank accounts and/or goods controlled by either or all of the Frakes;

g.  Placing a judgement against any source of income of the Frakes, including, but not limited to, social security payments;

h.  For compensatory damages;

i.  For and punitive damages;

j.  For counsel fees; and

k.  For such other and further relief as the Court may deem just and equitable.

10

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## BY BANK OF AMERICA, N.A.

57.    Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

58.    Bank of America is a place of public accommodation subject to the Americans with Disabilities Act, 42 U.S.C.S. §12111 et seq. (the "ADA"). See §12181(7)(F); see also ADA Sec.36.104(6).

59.    The ADA prohibits discrimination on the basis of disability by public accommodations. See 42 U.S.C. §12181.

60.    Mr. Stanhope has been blind and paralyzed since January 5, 2009.  He is a disabled individual pursuant to the ADA because he has physical impairments that limit one or more major life activities (walking and seeing).  See ADA Sec. 36.102(1)(i), (2).

61.    Mr. Stanhope opened the BOA Checking Account at the BOA Mount Holly, New Jersey branch on or about September 19, 2009, at which time, he was already disabled.

62.    When Mr. Stanhope opened the BOA Checking Account, he met with a BOA account representative.  Mr. Stanhope's disabilities were obvious, and he also advised the account representative that he was blind.  His blindness was also apparent when he required assistance when signing his name for the BOA Checking account, because he could not see.

63.    Despite Mr. Stanhope's disabilities, at no time did the BOA account representative offer any reasonable accommodations to Mr. Stanhope to compensate for his blindness.  For example, the BOA account representative did not read to Mr. Stanhope the terms and conditions of his Checking Account agreement with BOA or the terms and conditions of his ATM card, or offer him an auxiliary aid (such as audio tapes reading the agreements) prior to asking Mr.

11

Stanhope to agree to same.  Furthermore, the BOA account representative did not offer any auxiliary aids (including audio or other means) to Mr. Stanhope to assist him in accessing and reviewing his bank statements, which he was unable to read due to his blindness.

64.      Mr. Stanhope opened his BOA Savings Account at the BOA Mount Holly Branch in November 2012.  Mr. Stanhope again advised the BOA representative of his disabilities and his blindness was apparent because he needed assistance signing the account forms because he could not see.  Despite this fact, at no time did the BOA account representative offer any reasonable accommodations to Mr. Stanhope to compensate for his blindness.  The BOA account representative did not read to Mr. Stanhope the terms and conditions of his Savings Account agreement with BOA or the terms and conditions of his ATM card, or offer him an auxiliary aid (such as audio tapes reading the agreements) prior to asking Mr. Stanhope to agree to same. Furthermore, the BOA account representative did not offer any auxiliary aids (including audio or other means) to Mr. Stanhope to assist him in accessing and reviewing his bank statements, which he was unable to read due to his blindness.

65.      BOA, by failing to offer and provide reasonable accommodations to Mr. Stanhope as aforesaid, treated him differently than other individuals without such disabilities, and violated the ADA.  See ADA Sec.36.303(a) and (b)(2).

66.      Mr. Stanhope was damaged as a result of BOA's failure to provide him with reasonable accommodations, including auxiliary aids, to enable him to review the terms and conditions of his Checking and Savings Account and ATM agreements.   He was not fully informed of the terms and conditions of the agreements that BOA gave to him, and he did not fully understand the limitations of the agreements.  He relied upon BOA's representative told him, which was not sufficient.

67.     Mr. Stanhope was damaged as a result of BOA's failure to provide him with reasonable accommodations, including auxiliary aids, to enable him to read and review his monthly bank statements.   As a result, he relied upon his mother to tell him what his bank balances were, and she lied to him, and stole his money.  This could have been prevented if BOA had provided him with auxiliary means to review his bank statements, such as by audio tape.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.     Compelling BOA to comply with the ADA and to provide Mr. Stanhope with auxiliary means to review his Bank of America monthly bank statements, and to use his ATM card, that will compensate for his blindness.

b.     Reasonable counsel fees;

c.     Costs;

d.     All appropriate relief available pursuant to the ADA, 42 U.S.C.S. §12111 et seq.; and

e.     For such other and further relief as the Court may deem just and equitable.

## COUNT THREE
## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION BY BANK OF AMERICA, N.A.

68.     Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

69.     New Jersey Law prohibits discrimination against a person in a place of public accommodation on the basis that the person is disabled.   New Jersey Law Against Discrimination, N.J.S.A. §10:5-4.1 et seq. ("LAD").   See also N.J.S.A. §10:5-12f.(1).

70.     Bank of America is a place of public accommodation subject to the LAD.  See

*N.J.S.A.* §10:5-4.1 et seq.; see also N.J.S.A. §10:5-12(l).

71.    Mr. Stanhope has been blind and paralyzed since January 5, 2009.  He is a disabled individual pursuant to the LAD because he has physical disabilities and impairments, including blindness and paralysis.  See N.J.S.A. §10:5-5(q).

72.    Mr. Stanhope opened the BOA Checking Account at the BOA Mount Holly, New Jersey branch on or about September 19, 2009, at which time, he was already disabled.

73.    When Mr. Stanhope opened the BOA Checking Account, he met with a BOA account representative.   Mr. Stanhope's disabilities were obvious, and he also advised the account representative that he was blind.  His blindness was also apparent when he required assistance when signing his name for the BOA Checking account, because he could not see.

74.    Despite Mr. Stanhope's disabilities, at no time did the BOA account representative offer any reasonable accommodations to Mr. Stanhope to compensate for his blindness.  For example, the BOA account representative did not read to Mr. Stanhope the terms and conditions of his Checking Account agreement with BOA or the terms and conditions of his ATM card, or offer him an auxiliary aid (such as audio tapes reading the agreements) prior to asking Mr. Stanhope to agree to same.   Furthermore, the BOA account representative did not offer any auxiliary aids (including audio or other means) to Mr. Stanhope to assist him in accessing and reviewing his bank statements, which he was unable to read due to his blindness.

75.    Mr. Stanhope opened his BOA Savings Account at the BOA Mount Holly Branch in November 2012.  Mr. Stanhope again advised the BOA representative of his disabilities and his blindness was apparent because he needed assistance signing the account forms because he could not see.   Despite this fact, at no time did the BOA account representative offer any reasonable accommodations to Mr. Stanhope to compensate for his blindness.  The BOA account

14

representative did not read to Mr. Stanhope the terms and conditions of his Savings Account agreement with BOA or the terms and conditions of his ATM card, or offer him an auxiliary aid (such as audio tapes reading the agreements) prior to asking Mr. Stanhope to agree to same. Furthermore, the BOA account representative did not offer any auxiliary aids (including audio or other means) to Mr. Stanhope to assist him in accessing and reviewing his bank statements, which he was unable to read due to his blindness.

76.     BOA, by failing to offer and provide reasonable accommodations to Mr. Stanhope as aforesaid, treated him differently than other individuals without such disabilities, and violated the LAD.

77.     Mr. Stanhope was damaged as a result of BOA's failure to provide him with reasonable accommodations, including auxiliary aids, to enable him to review the terms and conditions of his Checking and Savings Account and ATM agreements.   He was not fully informed of the terms and conditions of the agreements that BOA gave to him, and he did not fully understand the limitations of the agreements.  He relied upon BOA's representative told him, which was not sufficient.

78.     Mr. Stanhope was damaged as a result of BOA's failure to provide him with reasonable accommodations, including auxiliary aids, to enable him to review his monthly bank statements.  As a result, he relied upon his mother to tell him what his bank balances were, and she lied to him, and stole his money.  This could have been prevented if BOA had provided him with auxiliary means to review his bank statements, such as by audio tape.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.     Compelling BOA to comply with the New Jersey Law Against Discrimination and

15

to provide Mr. Stanhope with auxiliary means to review his Bank of America monthly bank statements, and to use his ATM card, that will compensate for his blindness.

b.    Compensatory Damages;

c.    Reasonable counsel fees;

d.    Costs;

e.    Appropriate penalties pursuant to the New Jersey Law Against Discrimination, N.J.S.A. §10:5-14.1a;

f.    Punitive Damages; and

g.    For such other and further relief as the Court may deem just and equitable.

### COUNT FOUR
### BREACH OF CONTRACT BY BANK OF AMERICA, N.A.

79.    Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

80.    Mr. Stanhope entered into oral agreements with BOA regarding the terms and conditions of his BOA Checking and Savings Accounts, and his ATM card (the "Contracts"). Pursuant to those Contracts, there was a $1,000.00 daily monetary limit on any withdrawals and transfers from his bank accounts.    Also, pursuant to same, BOA had safeguards in place to prevent fraud, and would alert him promptly regarding any possible unauthorized activity. BOA also advised Mr. Stanhope that it had a fraud reimbursement policy in place and agreed to reimburse Mr. Stanhope in the event of fraud.

81.    Mr. Stanhope relied upon the statements made by the BOA bank representative(s), who informed him about the terms and conditions of his BOA Checking and Savings Accounts,

16

and the ATM terms and conditions, when he agreed to same. He also relied upon BOA"s representations regarding safeguards in place to prevent fraud, that it would notify him about any possible unauthorized fraudulent activity, and that it would reimburse him in the event of fraud.

82.    BOA also instituted policies and procedures consistent with Mr. Stanhope's oral agreement regarding the terms and conditions of his BOA Checking and Savings Accounts, and his ATM card.  For instance, BOA instituted daily limits on ATM withdrawals and debit card purchases.

83.    BOA also instituted policies and procedures to prevent fraud, to alert customers regarding possible fraud, to investigate fraud, and to reimburse customers when fraud occurred.

84.    Purportedly, BOA's limitations on monetary transfers and daily ATM withdrawals was intended to protect customers such as Mr. Stanhope and to prevent fraud.

85.    BOA violated its Contracts with Mr. Stanhope and BOA's own policies and procedures when BOA allowed improper and/or excessive withdrawals and transfers to be made from Mr. Stanhope's BOA Accounts.

86.    BOA improperly allowed ATM withdrawals and/or debit card purchases in excess of the daily withdrawal limit of $1,000 to be made from Mr. Stanhope's bank, which violated Mr. Stanhope's Contracts with BOA, as well as BOA's own policies and procedures instituted for the protection of customers such as Mr. Stanhope.

87.    By way of further example, BOA improperly allowed excessive transfers and withdrawals to be made from Mr. Stanhope's savings account, in violation of BOA's Contracts with Mr. Stanhope, BOA's own policies and procedures, and applicable law.

88.    BOA further breached its Contracts with Mr. Stanhope, as well as its own policies and procedures, when it failed to investigate the claims made by Mr. Stanhope when he put BOA

17

on notice of the fraud in February 2014, and failed to adhere to procedures regarding reimbursing banking customers for unauthorized use of their accounts.

89.  Mr. Stanhope is not bound by the terms, conditions and limitations contained in the BOA depository agreements for his Checking and Savings Accounts, which were not fully read to him, nor fully explained to him, before he entered into same, in violation of the ADA, as set forth in Point Two, *infra*.  BOA was aware of the fact that Mr. Stanhope was blind and failed to make reasonable accommodations to ensure that he heard and understood all of the terms and conditions of the BOA depository agreements before asking him to agree to same.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.  Compensatory damages;

b.  Legal fees;

c.  Costs of suit; and

d.  Such other relief as the Court may deem just and equitable.

## COUNT FIVE
## PROMISSORY ESTOPPEL AGAINST BANK OF AMERICA, N.A.
### (Alternative to Count Three)

90.  Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

91.  BOA made certain promises to Mr. Stanhope in order to induce him to agree to open his BOA Checking and Savings Accounts and his ATM Card, including, but not limited to, the following:

• BOA promised Mr. Stanhope that there was a $1,000.00 daily monetary limit on any withdrawals and transfers from his bank accounts.

18

- BOA promised Mr. Stanhope that it had safeguards in place to prevent fraud, and that BOA would monitor his accounts and alert him promptly regarding any suspicious or possible unauthorized activity on his accounts.

- BOA promised Mr. Stanhope that it had a fraud reimbursement policy in place and that it would investigate and reimburse him in the event that fraud occurred with is accounts.

92.    BOA made the aforementioned promises to Mr. Stanhope with the expectation that he would rely upon same and to induce him to open the BOA Checking and Savings Account and ATM card.

93.    Mr. Stanhope reasonably relied upon BOA's promises and opened the BOA Checking and Savings Account and ATM card, with the expectation that BOA would rely upon its promises.

94.    Mr. Stanhope's relied upon BOA's promises to his detriment because BOA did not abide by its aforementioned promises to Mr. Stanhope.

95.    BOA did not honor its promise to Mr. Stanhope that it would impose a $1,000.00 daily monetary limit on ATM withdrawals from his accounts and prevent withdrawals in excess of that amount;

96.    BOA did not honor its promise to Mr. Stanhope that it would monitor his accounts for fraud and notify him promptly if suspicious or possible unauthorized activity occurred;

97.    BOA did not honor its promise to Mr. Stanhope that it would investigate fraud and reimburse him in the event that fraudulent activity occurred with his accounts.

98.    As a result of BOA's breaches of its promises to Mr. Stanhope, he has been damaged.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in

19

his favor and against the Defendant Bank of America as follows:

    a.  Compensatory damages;

    b.  Legal fees;

    c.  Costs of suit; and

    d.  Such other relief as the Court may deem just and equitable.

**COUNT SIX**
**NEGLIGENCE BY BANK OF AMERICA, N.A.**

99.    Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

100.    BOA was negligent for, among other reasons, wrongfully and improperly failing to:

    a.  Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

    b.  Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

    c.  implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

    a.  Compensatory damages;

    b.  Legal fees;

    c.  Costs of suit; and

    d.  Such other relief as the Court may deem just and equitable.

20

## COUNT SEVEN
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING BY BANK OF AMERICA, N.A.

101.    Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

102.    BOA's performance under the Contracts was subject the implied covenant of good faith and fair dealing and the reasonable expectations of the parties.

103.    BOA abused its contractual discretion (if any) and the reasonable expectations of Mr. Stanhope when it allowed ATM withdrawals and/or debit card purchases in excess of $1,000 per day to be made from Mr. Stanhope's bank account(s).

104.    BOA abused its contractual discretion (if any) and the reasonable expectations of Mr. Stanhope when it allowed excessive large transfers and withdrawals to be made from Mr. Stanhope's savings account, in violation of BOA's policies and procedures.

105.    BOA abused its contractual discretion (if any) when it failed to investigate Mr. Stanhope's claims regarding fraud with respect to his account(s) in February 2014.

106.    BOAs aforementioned conduct was egregious and violated the implied covenant of good faith and fair dealing, as BOA acted in contradiction of its own policies and procedures instituted for the protection of customers such as Mr. Stanhope to prevent fraud.

107.    BOA further violated the implied covenant of good faith and fair dealing and the reasonable expectations of Mr. Stanhope when BOA failed and refused to cooperate with Mr. Stanhope's request for his bank account records, including, without limitation, documentation regarding the depository agreement(s), the terms and conditions of his account(s) and signatories to same.

108.    BOA's refusal to cooperate with Mr. Stanhope's request for his bank records

(including, *inter alia*, documentation regarding the depository agreements) was egregious and hampered Mr. Stanhope's ability to investigate the fraud.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

    a.  Compensatory damages;

    b.  Legal fees;

    c.  Costs of suit; and

    d.  Such other relief as the Court may deem just and equitable.

### COUNT EIGHT
### BREACH OF FIDUCIARY DUTY BY BANK OF AMERICA, N.A.

109.   Plaintiff incorporates by reference the preceding allegations of the Verified Third Amended Complaint as if set forth herein at length.

110.   BOA had a fiduciary duty to Mr. Stanhope, a BOA bank account holder with known disabilities (including paralysis and blindness), to protect his BOA Accounts from potential fraud by, *inter alia*, enforcing its policies and procedures.

111.   BOA breached its fiduciary duties by, among other reasons, wrongfully and improperly failing to:

    a.  Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

    b.  Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

    c.  Enforce their own policies and procedures to prevent the very fraud that occurred from occurring, and/or continuing to occur;

d.   implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA;

e.   limit the cash withdrawals for Mr. Stanhope's account through their ATM machines, which is, upon information and belief, $1000.00;

f.   limit the transfer between the BOA Accounts;

g.   reimburse Mr. Stanhope, despite BOA claiming to institute 'fraud protection' on behalf of its banking customers;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.   Compensatory damages;

b.   Legal fees;

c.   Costs of suit; and

d.   Such other relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Pursuant to R 4:25-1, Plaintiff hereby demands trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Daniel M. Rosenberg, Esquire and Richard H. Kim, Esquire are hereby designated as trial counsel for the Plaintiff.

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my information and belief, that the matter in controversy in this action, is not currently the subject of any other action pending in any other court of this State.

Respectfully submitted,

DANIEL M. ROSENBERG &
ASSOCIATES, LLC

Date:  March 18, 2016

By: _____
    Daniel M. Rosenberg, Esquire
    Attorney Identification No.: 011522003
    141 High Street
    Mount Holly, New Jersey 08060
    (609) 216-7400 (telephone)
    (609) 207-3767 (facsimile)
    Daniel@danielmrosenberg.com
    *Co-Counsel for Plaintiff*

    THE KIM LAW FIRM, LLC
    Richard H. Kim, Esquire
    Lisa A. Buckalew, Esquire
    Attorney ID Nos. 010412005/021231996
    911 Arch St., Suite 101
    Philadelphia, Pa 19107
    (855) 996-6342 (telephone)
    (855) 235-5855 (facsimile)
    rkim@thekimlawfirmllc.com
    lbuckalew@thekimlawfirmllc.com
    *Co-Counsel for Plaintiff*

DANIEL M. ROSENBERG &
ASSOCIATES, LLC
By:   Daniel M. Rosenberg, Esquire
Attorney Identification No.: 015522003
141 High Street
Mount Holly, New Jersey 08060
(609) 216-7400 (telephone)
(609) 207-3767 (facsimile)
www.danielmrosenberg.com

Attorneys for Plaintiff, Richard Stanhope

THE KIM LAW FIRM, LLC
By:   Richard H. Kim, Esquire
        Lisa A. Buckalew, Esquire
Attorney ID Nos. 010412005/021231996
911 Arch S    Suite 101
Philadelphia,    \  19107
Ph. 855-996-     : Fax 855-235-5855
Email: rkim@thekimlawfirmllc.com
        lbuckalew@thekimlawfirmllc.com

| | |
|---|---|
| Richard Stanhope <br><br> Plaintiff, <br><br> v. <br><br> Bank of America, N.A., Deborah Carter Frake, Harry Frake, III, John and Jane Doe 1-5, AND ABC Corps, 1-5. <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> CHANCERY DIVISION <br> BURLINGTON COUNTY <br> DOCKET NO.: C-110-14 <br><br> CIVIL ACTION <br><br> **VERIFIED SECOND AMENDED COMPLAINT** |

Plaintiff, Richard Stanhope, by way of Verified Second Amended Complaint against the

Defendants, Bank of America, N.A., Deborah Carter Frake and Harry Frake, III, avers the

following:

## INTRODUCTION

1.    Plaintiff, Richard Stanhope, sustained serious injuries from being struck by a motor vehicle on or about January 5, 2009.  As a result of the accident, Mr. Stanhope is now paralyzed and blind.

2.    A personal injury lawsuit was initiated, and Mr. Stanhope received approximately $343,000.00 (the "Settlement Funds") in settlement of the matter.

3.    These funds were meant for, among other things, to assist Mr. Stanhope with living and medical costs throughout his lifetime – he is only twenty-six (26) years old.

4.    However, approximately $300,000.00 (and possibly more) of the Settlement Funds were stolen by Defendants, Deborah Carter Frake ("D. Frake", Mr. Stanhope's mother) and Harry Frake, III (Mr. Stanhope's step-father) ("H. Frake", with D. Frake collectively referred to hereinafter as the "Frakes").

5.    Indeed, the Frakes took advantage of Mr. Stanhope's physical disabilities, and stole hundreds of thousands of dollars from him.

6.    The Frakes not only stole money directly from Mr. Stanhope's bank accounts through the use of a debit card at money access machines, but they used that same card to shower themselves with lavish shopping sprees.

7.    The very funds that were stolen - meant to sustain Mr. Stanhope through the rest of his young life - are now gone.

8.    What's more, Bank of American, N.A. ("BOA") wrongfully: (i) breached its contract; (ii) was negligent; (iii) breached the implied covenants of good faith and fair dealing; breached its fiduciary duty; and (iv) violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq.*, by, among other things, failing to institute appropriate measures to protect Mr.

2

Stanhopes banks accounts (especially given his disabilities); monitor Mr. Stanhope's bank accounts; enforcing their own policies and procedures to prevent the very fraud that occurred from occurring, and continuing to occur; and/or enforcing their own policies and procedures relating to client reimbursement for victims of fraud.

9.      By way of example, and without limitation, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA checking account. However, the Frakes regularly utilized automated money access machines ("ATM") to withdraw cash from Plaintiff's BOA account in excess of the $1,000.00 daily withdrawal limit established by BOA and applicable to Plaintiff's account. The redacted banking statements for Mr. Stanhope's BOA checking account are attached hereto as "**Exhibit A**".

10.     Moreover, when BOA was put on notice of the fraud in or around February 2014, upon information and belief, it failed to investigate the claims made by Mr. Stanhope – thereby negligently failing to adhere to procedures regarding reimbursing banking customers for unauthorized use of their accounts - and forced Mr. Stanhope to leave the Mount Holly, New Jersey BOA branch with threat of prosecution from law enforcement.

11.     Accordingly, Plaintiff has instituted this action for equitable and financial relief as a result of Defendants' wrongdoing, as set forth in more detail below.

<u>PARTIES</u>

12.     Plaintiff, Richard Stanhope, is an individual having a residence at 85 Madison Ave., Mount Holly NJ 08060.

13.     Defendant BOA is a banking entity registered in Delaware, with a principal place of business located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

3

14.     Defendant, Deborah Carter Frake is the Plaintiff's mother, and she resides at 47 Mount Holly Avenue, Mount Holly, New Jersey.

15.     Defendant, Harry Frake, III is the Plaintiff's step-father, and resides at 47 Mount Holly Avenue, Mount Holly, New Jersey.

## JURISDICTION

16.     The acts and wrongdoing alleged herein occurred in the State of New Jersey, and almost entirely in Burlington County.

17.     Richard Stanhope, Deborah Carter Frake, and Harry Frake, III, reside in Burlington County, New Jersey.

18.     BOA conducts business within Burlington County, New Jersey.

19.     The BOA branch location through which Mr. Stanhope managed his accounts is located in Burlington County, New Jersey.

20.     A significant portion of the stolen Settlement Funds, if not the entire amount, upon information and belief, was spent in or around Burlington County, New Jersey.

## FACTS

### Settlement Proceeds

21.     Following Mr. Stanhope's motor vehicle accident in 2009, he received approximately $343,000.00 in settlement proceeds (the "Settlement Funds") in or around October, 2012.

22.     The Settlement Funds were then deposited into a BOA bank checking account (the "BOA Checking Account") for safekeeping.

23.     Of the $343,000.00 in Settlement Funds, Mr. Stanhope transferred approximately $155,013.30 to a BOA Savings Account (with the BOA Checking Account,

collectively, the "BOA Accounts"). Redacted statements for the BOA Savings Account are attached hereto as "**Exhibit B**".

24.     At all times relevant hereto, Mr. Stanhope consulted with BOA regarding his BOA accounts, and BOA was well aware of his disabilities (including his blindness and paralysis). Mr. Stanhope relied upon BOA's advice regarding his accounts.

25.     When the BOA Checking Account balance started to run low, however, the Frakes gained access to the BOA Savings Account and transferred funds on numerous occasions, each time in significant increments of approximately $15,000.00, without Mr. Stanhope's permission.

26.     Not only was BOA negligent for not preventing the aforementioned continuous transfers to occur from Plaintiff's BOA Accounts, upon information and belief, there were policies and procedures in place that should have prevented such large sums of money from being transferred between accounts.

27.     The funds in the BOA Accounts were intended to assist with medical and living costs for the duration of Mr. Stanhope's life.

28.     Mr. Stanhope is currently 26 years old.

<u>The Frakes' Use of the Funds</u>

29.     Since receiving the Settlement Funds, the Frakes, Plaintiff's parents, have never had any meaningful employment.

30.     The only known source of income for either of the Defendants is social security benefits received by Harry Frake, III ("H. Frake"), which is only a recent occurrence.

31.     Since Mr. Stanhope received the Settlement Funds, or shortly thereafter, the Defendants have been fraudulently siphoning off funds from the BOA Account.

5

32.     The Frakes' used the debit card (the "Debit Card") associated with the BOA Account to withdraw cash - sometimes up to $3,000.00/day – from various ATM machines.

33.     The Debit Card was also used for shopping sprees at retailers such as BJ's Wholesale Club, Walmart and the Columbus Farmers Market - to name a few.  Sometimes, a thousand ($1,000.00) dollar a day would be spent at these vendors.

34.     The Debit Card was held in trust by Mr. Stanhope's mother for very specific negligible uses – such as purchasing shampoo and soap, and paying household utilities since the parties shared the same residence.

35.     Mr. Stanhope specifically gave his mother, D. Frake, permission in each instance for the use of the Debit Card for a specific limited purpose.  In other words, neither of the Frakes had *carte blanche* authority for the use of the Debit Card – far from it.

36.     In or about February 2014, Mr. Stanhope discovered the wrongdoing by the Frakes, which resulted in the theft of approximately $300,000.00.

37.     In total, Mr. Stanhope was only left in total with approximately $43,000.00 between the BOA Accounts.

## Defendant BOA

38.     During this time, from approximately October 2012 through February 2014, BOA was entrusted with the Settlement Funds, but breached its duties, failed to exercise due care, and was negligent by, among other things, allowing the Frakes' wrongful conduct to continuously occur.

39.     Indeed, BOA displayed gross negligence and failed in its duties, responsibilities and contractual obligations to Mr. Stanhope by, among other reasons, completely failing to

6

institute and/or follow policies and procedures to guard against the very fraud that occurred, especially given Mr. Stanhope's physical disabilities.

40.     For example, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA Checking Account.  However, BOA regularly breached its promise to Plaintiff - that a daily withdrawal limit of $1000 would be placed on the BOA Checking Account - and allowed the Frakes to repeatedly withdraw cash from this Account in excess of the $1,000.00 limit at various ATMs, as reflected in "**Exhibit A**".

41.     Moreover, these transactions were accruing significant fees, which should have further alerted BOA that the activity that was occurring was irregular and fraudulent.

42.     But for BOA's wrongful conduct, the losses sustained by Mr. Stanhope could have been significantly diminished or prevented very early.

43.     BOA further breached its promises to Mr. Stanhope, relating to transfer of funds between bank accounts.  BOA promised to limit transfers from the BOA Savings Account to other BOA accounts, including checking accounts, in an amount less than $15,000.  Despite this assurance, BOA allowed the Frakes to transfer $15,000.00 at a time from Mr. Stanhope's BOA Savings Account to his BOA Checking Account.  Such activity should have alerted BOA that irregular and fraudulent activity was occurring.

44.     Further, if there were no policies and procedures instituted by BOA to limit transfers between bank accounts, such a failure would have also been negligent and a breach of its fiduciary duties to Mr. Stanhope, which could have limited the extent of the Frakes' wrongdoing.

45.     When Mr. Stanhope did learn of the Frakes' wrongful conduct, he notified BOA employees at its Mount Holly, New Jersey branch.

46.     In line with BOA's improper behavior, when its representatives were notified, they failed to properly investigate the loss, did not follow-up with Mr. Stanhope to acquire additional information, and refused to provide him with BOA materials that he requested, including, but not limited to, initial account opening information setting forth the limits on his BOA Checking Account and BOA Savings Account.

47.     BOA operated in bad faith, and its wrongful conduct was flagrantly in breach of its promises, duties and obligations by, among other reasons, failing to follow its own guidelines, implementing common sense by not questioning the bizarre, peculiar and irregular transactions that were occurring with Mr. Stanhope's BOA Accounts, and/or instituting basic procedures to protect him.

## COUNT ONE

### FRAUD – INJUNCTIVE RELIEF AGAINST DEBORAH CARTER FRAKE AND HARRY FRAKE, III

48.     Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

49.     At all times the Frakes were in possession of the Debit Card, Mr. Stanhope never provided permission to use the card at any retailer, or withdraw any money from the related BOA Accounts.

50.     At all times the Frakes used the Debit Card fraudulently at various retailers, both in person, and online.

51.     The Frakes use of the Debit Card to access cash, or purchase goods, was without Mr. Stanhope's permission.

8

52.     The Frakes use of the Debit Card at any ATM machine was without Mr. Stanhope's permission, and was fraudulent. The Frankes' actions were intentional, malicious, and in willful disregard of Mr. Stanhope's rights.

WHEREFORE, Plaintiff demands judgment against the Defendants Deborah Carter Frake and Harry Frake, III (the Frakes), jointly and severally as follows:

a.   Mandatorily enjoining and restraining the Frakes, and any other individuals except the Plaintiff and Court appointed individuals from entering into the premises located at 47 Mount Holly Ave., Mount Holly, NJ, until further Order of this Court;

b.   Mandatorily enjoining and restraining the Frakes, and any other individuals except the Plaintiff and Court appointed individuals from entering onto any part of the Smart Cube located at 1817 US Route 38, Lumberton, NJ 08048, until further Order of this Court;

c.   Mandatorily enjoining and restraining the Frakes, and any other individuals except the Plaintiff and Court appointed individuals from contacting Bank of America, until further Order of this Court;

d.   Mandatorily enjoining and restraining the Frakes, and any other individuals except Court appointed individuals from transferring, selling and/or changing title to any property and/or goods in their possession, until further Order of this Court;

e.   Mandatorily enjoining and compelling the Frakes to provide an accounting of all assets, real property and goods within their possession, including, but not limited to: cash, stock, bonds, furniture, dolls, stuffed animals, or any item that could be

9

considered a collectible.

f.   Appointment of a Court designated receiver, accompanied by a member of the New Jersey State Police, County Sheriff's Office, municipal police officer, or any other such public safety official, if necessary, to access and account for all assets, property, bank accounts and/or goods controlled by either or all of the Frakes;

g.   Placing a judgement against any source of income of the Frakes, including, but not limited to, social security payments;

h.   For compensatory damages;

i.   For and punitive damages;

j.   For counsel fees; and

k.   For such other and further relief as the Court may deem just and equitable.

## COUNT TWO

## BREACH OF CONTRACT BY BANK OF AMERICA, N.A.

53.   Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

54.   BOA entered into written depository agreement(s) with Mr. Stanhope with respect to his bank accounts at BOA (the "Contracts"). Upon information and belief, those Contracts included terms and conditions that governed Mr. Stanhope's accounts at BOA.

55.   BOA also instituted policies and procedures that further governed Mr. Stanhope's bank accounts and became a part thereof. For instance, BOA instituted daily limits on ATM withdrawals and debit card purchases, and limited monetary transfers between savings and checking accounts.

10

56.     Purportedly, BOA's limitations on monetary transfers and daily ATM withdrawals was intended to protect customers such as Mr. Stanhope and to prevent fraud.

57.     BOA violated its Contracts with Mr. Stanhope and BOA's own policies and procedures when BOA allowed improper and/or excessive withdrawals and transfers to be made from Mr. Stanhope's BOA Accounts.

58.     By way of example, BOA improperly allowed ATM withdrawals and/or debit card purchases in excess of the daily withdrawal limit of $1,000 to be made from Mr. Stanhope's bank, which violated Mr. Stanhope's Contracts with BOA, as well as BOA's own policies and procedures instituted for the protection of customers such as Mr. Stanhope.

59.     By way of further example, BOA improperly allowed excessive transfers and withdrawals to be made from Mr. Stanhope's savings account, in violation of BOA's Contracts with Mr. Stanhope, BOA's own policies and procedures, and applicable law.

60.     BOA further breached its Contracts with Mr. Stanhope, as well as its own policies and procedures, when it failed to investigate the claims made by Mr. Stanhope when he put BOA on notice of the fraud in February 2014, and failed to adhere to procedures regarding reimbursing banking customers for unauthorized use of their accounts.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

      a.   Compensatory damages;

      b.   Legal fees;

      c.   Costs of suit; and

      d.   Such other relief as the Court may deem just and equitable.

11

## COUNT THREE

## NEGLIGENCE BY BANK OF AMERICA, N.A.

61.    Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

62.    BOA was negligent for, among other reasons, wrongfully and improperly failing to:

    a.  Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

    b.  Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

    c.  implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

    a.  Compensatory damages;

    b.  Legal fees;

    c.  Costs of suit; and

    d.  Such other relief as the Court may deem just and equitable.

12

## COUNT FOUR

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BY BANK OF AMERICA, N.A.

63.    Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

64.    BOA's performance under the Contracts was subject the implied covenant of good faith and fair dealing and the reasonable expectations of the parties.

65.    BOA abused its contractual discretion (if any) and the reasonable expectations of Mr. Stanhope when it allowed ATM withdrawals and/or debit card purchases in excess of $1,000 per day to be made from Mr. Stanhope's bank account(s).

66.    BOA abused its contractual discretion (if any) and the reasonable expectations of Mr. Stanhope when it allowed excessive large transfers and withdrawals to be made from Mr. Stanhope's savings account, in violation of BOA's policies and procedures.

67.    BOA abused its contractual discretion (if any) when it failed to investigate Mr. Stanhope's claims regarding fraud with respect to his account(s) in February 2014.

68.    BOAs aforementioned conduct was egregious and violated the implied covenant of good faith and fair dealing, as BOA acted in contradiction of its own policies and procedures instituted for the protection of customers such as Mr. Stanhope to prevent fraud.

69.    BOA further violated the implied covenant of good faith and fair dealing and the reasonable expectations of Mr. Stanhope when BOA failed and refused to cooperate with Mr. Stanhope's request for his bank account records, including, without limitation, documentation regarding the depository agreement(s), the terms and conditions of his account(s) and

13

signatories to same.

70.    BOA's refusal to cooperate with Mr. Stanhope's request for his bank records (including, *inter alia*, documentation regarding the depository agreements) was egregious and hampered Mr. Stanhope's ability to investigate the fraud.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.  Compensatory damages;

b.  Legal fees;

c.  Costs of suit; and

d.  Such other relief as the Court may deem just and equitable.

## COUNT FIVE

## BREACH OF FIDUCIARY DUTY BY BANK OF AMERICA, N.A.

71.    Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

72.    BOA had a fiduciary duty to Mr. Stanhope, a BOA bank account holder with known disabilities (including paralysis and blindness), to protect his BOA Accounts from potential fraud by, *inter alia*, enforcing its policies and procedures.

73.    BOA breached its fiduciary duties by, among other reasons, wrongfully and improperly failing to:

a.    Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

b.    Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

14

c.    Enforce their own policies and procedures to prevent the very fraud that occurred from occurring, and/or continuing to occur;

d.    implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA;

e.    limit the cash withdrawals for Mr. Stanhope's account through their ATM machines, which is, upon information and belief, $1000.00;

f.    limit the transfer between the BOA Accounts;

g.    reimburse Mr. Stanhope, despite BOA claiming to institute 'fraud protection' on behalf of its banking customers;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

a.    Compensatory damages;

b.    Legal fees;

c.    Costs of suit; and

d.    Such other relief as the Court may deem just and equitable.

## COUNT SIX
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. 56:8-2 ET SEQ.) BY BOA

74.    Plaintiff incorporates by reference the preceding allegations of the Verified Second Amended Complaint as if set forth herein at length.

75.    A plaintiff states a claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.* (the "CFA") by alleging (1) unlawful conduct by the defendant; (2) an

15

ascertainable loss by the plaintiff; and (3) a causal relationship between the two.   N.J.S.A. 56:8-2.

76.   Unlawful conduct under the CFA can include any unconscionable commercial practice, which is defined as "the standard of conduct contemplating good faith, honesty in fact and observance of fair dealing." N.J.S.A. 56:8-2; *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 680 (D.N.J. 2012).  The practice must be misleading and outside the norm of a reasonable business practice. *Hughes, supra.*, 856 F. Supp. 2d at 680.

77.   BOA committed unlawful conduct in violation of the CFA when it violated its own policies and procedures, as well as the Contracts with Mr. Stanhope, by allowing excessive large transfers and withdrawals to be made from Mr. Stanhope's savings account.   Such unlawful conduct was outside of the norm of reasonable business practice.

78.   As a result of BOA's aforementioned unlawful conduct, Mr. Stanhope sustained monetary losses, as sums were wrongfully withdrawn and transferred from Mr. Stanhope's account(s) at BOA.

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered in his favor and against the Defendant Bank of America as follows:

      a.   Compensatory damages;

      b.   Treble Damages pursuant to N.J.S.A. 56:8-2 *et seq.*

      c.   Legal fees;

      d.   Costs of suit; and

      e.   Such other relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Pursuant to R 4:25-1, Plaintiff hereby demands trial by jury as to all issues.

16

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Daniel M. Rosenberg, Esquire and Richard H. Kim, Esquire are hereby designated as trial counsel for the Plaintiff.

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my information and belief, that the matter in controversy in this action, is not currently the subject of any other action pending in any other court of this State.

Respectfully submitted,

DANIEL M. ROSENBERG & ASSOCIATES, LLC

Date: 9/24/15

By: _____
Daniel M. Rosenberg, Esquire
Attorney Identification No.: 011522003
141 High Street
Mount Holly, New Jersey 08060
(609) 216-7400 (telephone)
(609) 207-3767 (facsimile)
Daniel@danielmrosenberg.com
*Co-Counsel for Plaintiff*

THE KIM LAW FIRM, LLC
Richard H. Kim, Esquire
Lisa A. Buckalew, Esquire
Attorney ID Nos. 010412005/021231996
911 Arch St., Suite 101
Philadelphia, Pa 19107
(855) 996-6342 (telephone)
(855) 235-5855 (facsimile)
rkim@thekimlawfirmllc.com
lbuckalew@thekimlawfirmllc.com
*Co-Counsel for Plaintiff*

17

## <u>VERIFICATION</u>

I, Richard Stanhope, hereby certify and say as follows:

1.     I am the Plaintiff in <u>Richard Stanhope v. Bank of America, N.A., et al.</u>

2.     I have personal knowledge of the facts alleged in the Verified Second Amended Complaint.

3.     The factual allegations of the Verified Second Amended Complaint are true to the best of my knowledge.

4.     All documents attached to the Verified Second Amended Complaint are, to the best of my knowledge, true copies and have not been changed, modified, adjusted or otherwise altered in any wrongful manner by me or my agents.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 9/24/15

Richard Stanhope

18

Siobhan E. Moran, Esq.
Attorney ID No. 023791987
MORAN • KARAMOUZIS LLP
265 Sunrise Highway, Suite 61
Rockville Centre, New York  11570
(516) 678-6660
(516) 678-6661

Attorneys for Defendant Bank of America

——————————————————————x

| | |
|---|---|
| RICHARD STANHOPE, | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| Plaintiff, | BURLINGTON COUNTY |
| -against- | |
| | CIVIL ACTION |
| BANK OF AMERICA,NA.A PNC BANK, NA., | |
| DEBORAH CARTER FRAKE, HARRY | DOCKET NO.:  C-110-14 |
| FRAKE, III, JOHN AND JANE DOE 1-5, | |
| AND ABC CORPS, 1-5. | ANSWER |
| Defendants. | |

——————————————————————x

## BANK OF AMERICA, N.A.'S ANSWER AND
## AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

Defendant, BANK OF AMERICA, N.A ("BANA"), through undersigned counsel, and pursuant to all applicable Rules of New Jersey Civil Procedure, files this, its Answer and Affirmative Defenses to Plaintiff RICHARD STANHOPE'S Second Amended Complaint, it denies all allegations not specifically admitted herein and it states as follows:

## ANSWER

## INTRODUCTION

1.      BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

2.      BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

3.      BANA is without knowledge as to the allegations contained in this paragraph, and they

1

are therefore denied.

4.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

5.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

6.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

7.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

8.     Denied.

9.     BANA admits that exhibits attached to the Second Amended Complaint contain portions of marked-up and/or redacted statements from Plaintiff's checking account with BANA ending in 1853.   However, BANA is without knowledge as to the remaining allegations of this paragraph, and they are therefore denied.

10.    Denied.

11.    Denied.

## PARTIES

12.    BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

13.    BANA is a national banking association organized under the laws of the United States and it is authorized to conduct business in the state of New Jersey.  BANA's principal place of business is located at 100 North Tryon Street, Charlotte in Mecklenburg County, North Carolina.

14.    BANA is without knowledge as to the allegations contained in this paragraph, and they

are therefore denied.

15.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

## JURISDICTION

16.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

17.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

18.   Admitted.

19.   Admitted that Plaintiff conducted business with BANA through a branch located in Burlington County, New Jersey.  BANA is without knowledge as to the remaining allegations contained in this paragraph, and they are therefore denied.

20.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

## FACTS

### Settlement Proceeds

21.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

22.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

23.   BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

24.   BANA is without knowledge as to the allegations contained in this paragraph, and they

are therefore denied.

25.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

26.     Denied.

27.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

28.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

### The Frakes' Use of the Funds

29.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

30.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

31.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

32.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

33.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

34.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

35.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

36.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

37.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

## Defendant [BANA]

38.     Denied.

39.     Denied.

40.     BANA is without knowledge as to the allegations in this paragraph referring to the amount of the daily cash withdrawal limit on Plaintiff's account, and they are therefore denied. BANA denies the remaining allegations in this paragraph regarding BANA's alleged breach with respect to Plaintiff's account.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

46.     Denied.

47.     Denied.

## COUNT ONE

## FRAUD – INJUNCTIVE RELIEF AGAINST FRAKE DEFENDANTS

48.     BANA notes that the allegations in Count One are not directed to it, and it is not required to respond.  However, to the extent a response to this paragraph is required, BANA incorporates

by reference its responses to the preceding allegations of the Second Amended Complaint, above.

49.     BANA notes that the allegations in Count One are not directed to it, and it is not required to respond.  However, to the extent a response to this paragraph is required, BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

50.     BANA notes that the allegations in Count One are not directed to it, and it is not required to respond.  However, to the extent a response to this paragraph is required, BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

51.     BANA notes that the allegations in Count One are not directed to it, and it is not required to respond.  However, to the extent a response to this paragraph is required, BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

52.     BANA notes that the allegations in Count One are not directed to it, and it is not required to respond.  However, to the extent a response to this paragraph is required, BANA is without knowledge as to the allegations contained in this paragraph, and they are therefore denied.

BANA notes that the demands made in the "Wherefore" clause following Count One are not directed to it, and it is not required to respond to them.  However, to the extent a response is required, BANA denies that Plaintiff is entitled to the requested relief.

## COUNT TWO

## BREACH OF CONTRACT BY BANA

53.     BANA incorporates by reference its responses to the preceding allegations of the Second Amended Complaint, above.

54.     Admitted.

55.     BANA admits that Plaintiff's accounts may have been subject to daily limits on ATM

6

withdrawals.  BANA denies that the remaining allegations in this paragraph.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Denied.

BANA denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following Count Two.

**COUNT THREE**

**NEGLIGENCE BY BANA**

61.    BANA incorporates by reference its responses to the preceding allegations of the Second Amended Complaint, above.

62.    Denied.

BANA denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following Count Three.

**COUNT FOUR**

**BREACH OF IMPLIED CONVENANT OF
GOOD FAITH AND FAIR DEALING BY BANA**

63.    BANA incorporates by reference its responses to the preceding allegations of the Second Amended Complaint, above.

64.    Paragraph 64 is a legal conclusion as to which no response is required.

65.    Denied.

66.    Denied.

67.    Denied.

7

68.    Denied.

69.    Denied.

70.    Denied.

BANA denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following Count Four.

## COUNT FIVE

## BREACH OF FIDUCIARY DUTY BY BANA

71.    BANA incorporates by reference its responses to the preceding allegations of the Second Amended Complaint, above.

72.    Denied.

73.    Denied.

BANA denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following Count Five.

## COUNT SIX

## VIOLATION OF THE NEW JERSEY CONSUMER
## FRAUD ACT BY BANA JURY TRIAL DEMAND

74.    Count Six was dismissed by the order of this Court and does not require a response.

75.    Count Six was dismissed by the order of this Court and does not require a response.

76.    Count Six was dismissed by the order of this Court and does not require a response.

77.    Count Six was dismissed by the order of this Court and does not require a response.

78.    Count Six was dismissed by the order of this Court and does not require a response.

## JURY TRIAL DEMAND

BANA denies that Plaintiff is entitled to a trial by jury pursuant to the terms of the parties' agreement.   BANA will be filing a separate motion to strike Plaintiff's Jury Trial

Demand.

## AFFIRMATIVE DEFENSES

### FIRST SEPARATE AND AFFIRMATIVE DEFENSE

BANA states the Complaint fails to state a claim against BANA upon which relief can be granted.

### SECOND SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that the damages, if any, of Plaintiff RICHARD STANHOPE ("Plaintiff") should be apportioned among the parties according to their respective fault.

### THIRD SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that, at all relevant times, it acted in good faith, exercised ordinary care, and acted in a commercially reasonable manner.

### FOURTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff is estopped from recovering from BANA for the alleged acts of Debora Carter Frake and Harry Frake, III ("the Frake defendants") because Plaintiff gave the Frake defendants access to his accounts, in breach of his account agreement(s) with BANA.

### FIFTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that any alleged damages to Plaintiff were the result of acts or omissions of third parties, the Frake defendants, over whom BANA has no control, and for whom BANA has no responsibility.

### SIXTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff's damages, if any, are expressly limited to the amount of the items reduced by an amount that could not have been realized by the exercise of ordinary care.

### SEVENTH A SEPARATE AND AFFIRMATIVE DEFENSE

9

BANA states that Plaintiff failed to take reasonable steps to adequately mitigate his damages, if any, by not undertaking proper preventative or curative measures. In particular, BANA has no record that Plaintiff promptly reported to BANA the allegedly unauthorized transactions on his accounts, as is required by Plaintiff's account agreement(s) with BANA.

### EIGHTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff's recovery, if any, from BANA should be barred or diminished as a result of any setoff for amounts paid to Plaintiff by other persons or entities, including, but not limited to, the Frake defendants, and insurance companies, with respect to Plaintiff's alleged claims and damages.

### NINTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff's claims are barred in whole or in party by the statute of limitations.

### TENTH A SEPARATE AND FFIRMATIVE DEFENSE

BANA states that Plaintiff agreed to be bound by the terms of Bank of America's Deposit Agreement when it opened the account from which the alleged unauthorized transactions were made. The Deposit Agreement requires customers to promptly review all transactions and to promptly notify BANA of any alleged unauthorized transactions. Plaintiff's claims are barred by contract because Plaintiff failed to timely report the alleged unauthorized transactions.

### ELEVENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff failed to timely report the alleged unauthorized transactions as required by the Uniform Commercial Code and the New Jersey Commercial Code in order to sustain its claims against BANA.

### TWELFTH SEPARATE AND AFFIRMATIVE DEFENSE

10

BANA states that Plaintiff's failure to exercise ordinary care substantially contributed to Plaintiff's loss thus, Plaintiff is precluded from recovery against BANA.

### THIRTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that it is not responsible for the criminal acts of any persons, including third parties.

### FOURTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that pursuant to the Deposit Agreement, Plaintiff failed to notify BANA about any unauthorized transaction or signature within sixty (60) days after Plaintiff's monthly bank statements were made available to it.  Therefore, under the Deposit Agreement, Plaintiff is barred from bringing a claim against BANA related to any alleged unauthorized transaction or signature not timely reported to BANA.

### FIFTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that pursuant to New Jersey law and the Deposit Agreement, Plaintiff is precluded from bringing a claim against BANA because Plaintiff did not notify BANA of the alleged unauthorized transactions or signatures by the same wrong doer on the account within thirty (30) days following the closing date of the statement containing information on the first unauthorized transaction.

### SIXTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

Bank of America states that Plaintiff failed to bring this action within one year from the date of the occurrence of the alleged violation, and Plaintiff is therefore barred from bringing this action pursuant to the Electronic Funds Transfers Act, 15 U.S.C.A. §1693m(g) with respect to damages involving any unauthorized electronic funds transfers.

### SEVENTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

11

BANA states that Plaintiff may not recover for some or all of Plaintiff's alleged damages involving unauthorized electronic funds transfers due to Plaintiff's failure to give timely notice to BANA, pursuant to 12 C.F.R. §205.6(3).

## EIGHTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that any award in favor of Plaintiff must be set off or reduced by any recovery received by Plaintiffs from any third party. For example, this would include any recovery by Plaintiff from the Frake co-defendants.

## NINETEENTH SEPARATE AND AFFIRMATIVE DEFENSE

BANA states that Plaintiff agreed to be bound by the terms of BANA's Card Agreement and Disclosure and BANA's Deposit Agreement when it opened the accounts from which the alleged unauthorized transactions were made.  These agreements require customers to maintain their ATM card PIN information confidential, and it precludes liability against BANA for transactions which the cardholder authorized by giving others access to his account.  Plaintiff's claims are barred by contract because Plaintiff failed to protect his accounts, in breach of his agreements with BANA.

BANA reserves any additional and further defenses as may be revealed by additional information during the course of discovery and investigation, and as is consistent with the New Jersey Rules of Civil Procedure.

MORAN • KARAMOUZIS LLP

By: _Siobhan E. Moran_____

    Siobhan E. Moran, Esq.


265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
(516) 678-6661 (Facsimile)

*Attorneys for Defendant Bank of America, N.A.*

Dated:  January 13, 2016

13

DANIEL M. ROSENBERG &
ASSOCIATES, LLC
Daniel M. Rosenberg, Esquire
Attorney Identification No.: 015522003
141 High Street
Mount Holly, New Jersey 08060
(609) 216-7400 (telephone)
(609) 207-3767 (facsimile)
daniel@danielmrosenberg.com

THE KIM LAW FIRM, LLC
Richard H. Kim, Esquire
Attorney Identification No.: 010412005
911 Arch St., Suite 101
Philadelphia, Pa 19107
(855) 996-6342 (telephone)
(855) 235-5855 (facsimile)
rkim@thekimlawfirmllc.com

Attorneys for Plaintiff, Richard Stanhope

| | |
|---|---|
| Richard Stanhope | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| Plaintiff, | BURLINGTON COUNTY |
| | DOCKET NO.: C-110-14 |
| v. | |
| | CIVIL ACTION |
| Bank of America, N.A., PNC Bank, N.A., | |
| Deborah Carter Frake, Harry Frake, III, | |
| John and Jane Doe 1-5, AND ABC Corps, | VERIFIED AMENDED COMPLAINT |
| 1-5. | |
| | |
| Defendants. | |

Plaintiff, Richard Stanhope, by way of verified amended complaint against the

Defendants, Bank of America, N.A., PNC Bank, N.A., Deborah Carter Frake and Harry Frake,

III, states as follows:

**INTRODUCTION**

1.      Plaintiff, Richard Stanhope, sustained serious injuries from being crushed by a motor vehicle on or about January 5, 2009.  As a result of the accident, Mr. Stanhope is now paralyzed and blind.

2.      A personal injury lawsuit was initiated, and Mr. Stanhope received approximately $343,000.00 (the "Settlement Funds") in settlement of the matter.

3.      These funds were meant for, among other things, to assist Mr. Stanhope with living expenses, personal travel costs and dental costs throughout his lifetime – he is only twenty-six (26) years old.

4.      However, approximately $300,000.00 (and possibly more) of the Settlement Funds were stolen by Defendants, Deborah Carter Frake ("D. Frake", Mr. Stanhope's mother) and Harry Frake, III (Mr. Stanhope's step-father) ("H. Frake", with D. Frake collectively referred to hereinafter as the "Frakes").

5.      Indeed, the Frakes took advantage of Mr. Stanhope's physical disabilities, and stole hundreds of thousands of dollars from him.

6.      The Defendants not only stole money directly from Mr. Stanhope's bank accounts through the use of a debit card at money access machines, but they used that same card to shower themselves with lavish shopping sprees.

7.      The very funds that were stolen - meant to sustain Mr. Stanhope through the rest of his young life - are now gone.

8.      What's more, Bank of American, N.A. ("BOA") and PNC Bank, N.A. ("PNC", collectively with BOA, hereinafter the "Banking Defendants") were negligent, breached their fiduciary duties by, among other things, wrongfully and improperly failing to institute appropriate measures to protect Plaintiff's banks accounts (especially an individual with

2

disabilities); monitor Plaintiff's bank accounts; enforcing their own policies and procedures to prevent the very fraud that occurred from occurring, and continuing to occur; and/or enforcing their own policies and procedures relating to client reimbursement for victims of fraud.

9.     By way of example, and without limitation, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA checking account. However, the Frakes regularly withdrew cash from Plaintiff's BOA account in excess of the $1,000.00 limit at the Banking Defendants' money access machines ("MAC").

10.     Moreover, when BOA was put on notice of the fraud in or around February 2014, upon information and belief, it failed to investigate the claims made by Mr. Stanhope – thereby negligently failing to adhere to procedures regarding reimbursing banking customers for unauthorized use of their accounts - and forced Mr. Stanhope to leave the Mount Holly, New Jersey BOA branch with threat of prosecution from law enforcement.

11.     Accordingly, Plaintiff has instituted this action for equitable and financial relief as a result of Defendants' wrongdoing, as set forth in more detail below.

<u>PARTIES</u>

12.     Plaintiff, Richard Stanhope, is an individual having a residence at 85B Madison Ave., Mount Holly NJ 08060.

13.     Bank of America, N.A., is a banking entity registered in Delaware, with a principal place of business located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

14.     PNC Bank, N.A., is a banking entity registered in Pennsylvania, with a principal place of business located at One PNC Plaza, 249 Fifth Avenue, Pittsburgh, PA 15222.

15.     Defendant, Deborah Carter Frake is the Plaintiff's mother, and she resides at 47

3

Mount Holly Avenue, Mount Holly, New Jersey.

16.     Defendant, Harry Frake, III is the Plaintiff's step-father, and resides at 47 Mount Holly Avenue, Mount Holly, New Jersey.

## JURISDICTION

17.     The acts and wrongdoing alleged herein occurred in the State of New Jersey, and almost entirely in Burlington County.

18.     Richard Stanhope, Deborah Carter Frake, and Harry Frake, III, reside in Burlington County, New Jersey.

19.     Bank of America, N.A. conducts business within Burlington County, New Jersey.

20.     PNC Bank, N.A. conducts business within Burlington County, New Jersey.

21.     The Bank of America, N.A. branch location through which Mr. Stanhope managed his accounts is located in Burlington County, New Jersey.

22.     A significant portion of the stolen Settlement Funds, if not the entire amount was, upon information and belief, was spent in or around Burlington County, New Jersey.

## FACTS

### Settlement Proceeds

23.     Following Mr. Stanhope's motor vehicle accident in 2009, he received approximately $343,000.00 in settlement proceeds (the "Settlement Funds") in or around October, 2012.

24.     The Settlement Funds were then deposited into a BOA bank checking account (the "BOA Checking Account") for safekeeping.

25.     Of the $343,000.00 in Settlement Funds, Mr. Stanhope transferred

4

approximately $155,013.30 to a BOA Savings Account (with the BOA Checking Account, collectively, the "BOA Accounts").

26.    When the BOA Checking Account balance started to run low, however, the Frakes gained access to the BOA Savings Account and transferred funds on numerous occasions, each time in significant increments of approximately $15,000.00.

27.    Not only were the Banking Defendants negligent for not preventing these continuous transfers to occur, upon information and belief, there were policies and procedures in place that should have prevented such large sums of money from being transferred between accounts.

28.    The funds in the BOA Accounts were intended to assist with living costs, transportation and dental costs for the duration of Mr. Stanhope's life.

29.    Mr. Stanhope is currently 26 years old.

### The Frakes' Use of the Funds

30.    Since receiving the Settlement Funds, the Frakes, Plaintiff's parents, have never had any meaningful employment.

31.    The only known source of income for either of the Defendants is social security benefits received by Harry Frake, III ("H. Frake"), which is only a recent occurrence.

32.    Since Mr. Stanhope received the Settlement Funds, or shortly thereafter, the Defendants have been fraudulently siphoning off funds from the BOA Account.

33.    The Frakes' used the debit card (the "Debit Card") associated with the BOA Account to withdraw cash – at times far exceeding the $1,000.00/day limit - from various money access machines belonging to the Banking Defendants.

34.    The Debit Card was also used for shopping sprees at retailers such as BJ's

5

Wholesale Club, Walmart and the Columbus Farmers Market - to name a few.  Sometimes, a thousand ($1,000.00) dollar a day would be spent at these vendors.

35.     The Debit Card was held in trust by Mr. Stanhope's mother for very specific negligible uses – such as purchasing shampoo and soap, and paying household utilities since the parties shared the same residence.

36.     Mr. Stanhope specifically gave his mother, D. Frake, permission in each instance for the use of the Debit Card.  In other words, neither of the Frakes had *carte blanche* authority for the use of the Debit Card – far from it.

37.     In or about December, 2013, Mr. Stanhope discovered the wrongdoing by the Frakes, which resulted in the theft of approximately $300,000.00.

38.     In total, Mr. Stanhope was only left in total with approximately $43,000.00 between the BOA Bank Accounts.

### The Banking Defendants

39.     During this time, from approximately October, 2012 through February, 2014, BOA was entrusted with the Settlement Funds - but along with PNC - breached their duties, failed to exercise due care, and were negligent by, among other things, allowing the Frakes' wrongful conduct to continuously occur.

40.     Indeed, the Banking Defendants displayed gross negligence and failed in their duties, responsibilities and obligations to Mr. Stanhope by, among other reasons, completely failing to institute and/or follow policies and procedures to guard against the very fraud that occurred, especially given Mr. Stanhope's physical disabilities.

41.     For example, Mr. Stanhope had a daily cash withdrawal limit of $1,000.00 with his BOA Checking Account.  However, the Frakes regularly withdrew cash from this Account

6

in excess of the $1,000.00 limit at the Banking Defendants' MACs.

42.     Moreover, these transactions were accruing significant fees, which should have further alerted the Banking Defendants that the activity that was occurring was irregular and fraudulent.

43.     Not for the Banking Defendants wrongful and negligent conduct, the losses sustained by Mr. Stanhope could have been significantly diminished or prevented very early.

44.     Moreover, BOA should have followed its own guidelines relating to transfer of funds between bank accounts.  Upon information and belief, there are policies and procedures that set forth maximum transfer of funds between accounts.  By allowing transfers of $15,000.00 at a time, BOA was negligent and breached its fiduciary duties for having failed to adhere to its own banking procedures.  Such activity should have alerted BOA that irregular and fraudulent activity was occurring.

45.     And if there were no policies and procedures instituted by BOA to limit transfers between bank accounts, such a failure would have also been negligent and a breach of its fiduciary duties to Mr. Stanhope, which could have limited the extent of the Frakes' wrongdoing.

46.     In line with its improper behavior, when Mr. Stanhope did learn of the Frakes' wrongful conduct, he notified BOA employees at its Mount Holly, New Jersey branch.

47.     When representatives were notified, however, they failed to properly investigate the loss, did not follow-up with Mr. Stanhope to acquire additional information, and refused to provide him with BOA materials that he requested, including, but not limited to, initial account opening information setting forth the limits on his BOA Checking Account.

48.     The Banking Defendants operated in bad faith, were negligent and breached

7

their fiduciary duties by, among other reasons, failing to follow their own guidelines, implementing common sense by not questioning the bizarre, peculiar and irregular transactions that were occurring with Mr. Stanhope's BOA Accounts, and/or instituting basic procedures to protect him.

## COUNT ONE

### FRAUD – INJUNCTIVE RELIEF AGAINST DEBORAH CARTER FRAKE AND HARRY FRAKE, III

49.    Plaintiff incorporates by reference the preceding allegations of the Verified Amended Complaint as if set forth herein at length.

50.    At all times the Frakes were in possession of the Debit Card, Mr. Stanhope never provided permission to use the card at any retailer, or withdraw any money from the related BOA Accounts.

51.    At all times the Frakes used the Debit Card fraudulently at various retailers, both in person, and online.

52.    The Frakes use of the Debit Card to access cash, or purchase goods, was without permission.

53.    The Frakes use of the Debit Card at any money access machine was without permission, and was fraudulent.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally as follows:

    a.  Mandatorily enjoining and restraining all Defendants, and any other individuals except the Plaintiff and Court appointed individuals from entering into the premises located at 47 Mount Holly Avenue, Mount Holly, NJ, and any structures on that property, until further Order of this Court;

8

b. Mandatorily enjoining and restraining all Defendants, and any other individuals except the Plaintiff and Court appointed individuals from entering onto any part of the Smart Cube located at 1817 US Route 38, Lumberton, NJ 08048, until further Order of this Court;

c. Mandatorily enjoining and restraining all Defendants, and any other individuals except the Plaintiff and Court appointed individuals from contacting Bank of America, until further Order of this Court;

d. Mandatorily enjoining and restraining all Defendants, and any other individuals except Court appointed individuals from transferring, selling and/or changing title to any property and/or goods in their possession, until further Order of this Court;

e. Mandatorily enjoining and compelling the Defendants to provide an accounting of all assets, real property and goods within their possession, including, but not limited to: cash, stock, bonds, furniture, dolls, stuffed animals, tools (electronic or otherwise) or any item that could be considered a collectible.

f. Appointment of a Court designated receiver, accompanied by a member of the New Jersey State Police, County Sheriff's Office, municipal police officer, or any other such public safety official, if necessary, to access and account for all assets, property, bank accounts and/or goods controlled by either or all of the Defendants;

g. Placing a judgement against any source of income of the Frakes, including, but not limited to, social security payments;

h. For compensatory and punitive damages;

     i.   For counsel fees; and

     j.   For such other and further relief as the Court may deem just and equitable.

**COUNT TWO**

**NEGLIGENCE BY BANK OF AMERICA, N.A. AND PNC BANK, N.A.**

54.     Plaintiff incorporates by reference the preceding allegations of the Verified Amended Complaint as if set forth herein at length.

55.     The Banking Defendants were negligent for, among other reasons, wrongfully and improperly failing to:

     a.   Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

     b.   Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

     c.   Enforce their own policies and procedures to prevent the very fraud that occurred from occurring, and/or continuing to occur;

     d.   implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA and PNC;

     e.   limit the cash withdrawals for Mr. Stanhope's account through their MAC machines, which is, upon information and belief, $1000.00;

     f.   limit the transfer between the BOA Accounts;

     g.   reimburse Mr. Stanhope, despite BOA claiming to institute 'fraud protection' on behalf of its banking customers;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered

10

in his favor and against the Defendants as follows:

    a.  Compensatory damages;

    b.  Legal fees;

    c.  Costs of suit; and

    d.  Such other relief as the Court may deem just and equitable.

## COUNT THREE

### BREACH OF FIDUCIARY DUTY BY BANK OF AMERICA, N.A.

56.    Plaintiff incorporates by reference the preceding allegations of the Verified Amended Complaint as if set forth herein at length.

57.    BOA breached its fiduciary duties by, among other reasons, wrongfully and improperly failing to:

    a.  Observe or take note of the improper, irregular, or bizarre transactions taking place with respect to Mr. Stanhope's BOA Accounts;

    b.  Failing to offer banking services to a client with disabilities that are recognized under the American with Disabilities Act;

    c.  Enforce their own policies and procedures to prevent the very fraud that occurred from occurring, and/or continuing to occur;

    d.  implement common sense by not questioning the irregular and/or bizarre transactions that were occurring, which were incurring significant bank fees all for the benefit of BOA and PNC;

    e.  limit the cash withdrawals for Mr. Stanhope's account through their MAC machines, which is, upon information and belief, $1000.00;

    f.  limit the transfer between the BOA Accounts;

g.     reimburse Mr. Stanhope, despite BOA claiming to institute 'fraud

protection' on behalf of its banking customers;

WHEREFORE, Plaintiff, Richard Stanhope, hereby demands that judgment be entered

in his favor and against the Defendants as follows:

a.  Compensatory damages;

b.  Legal fees;

c.  Costs of suit; and

d.  Such other relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Pursuant to R 4:25-1, Plaintiff hereby demands trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Daniel M. Rosenberg, Esquire and Richard H. Kim, Esquire

are hereby designated as trial counsel for the Plaintiff.

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my information and belief, that the matter in controversy in this

action, is not currently the subject of any other action pending in any other court of this State.

Respectfully submitted,

DANIEL M. ROSENBERG &
ASSOCIATES, LLC

Date: May 19, 2015          By: _____

Daniel M. Rosenberg, Esquire
Attorney Identification No.: 011522003
141 High Street
Mount Holly, New Jersey 08060
(609) 216-7400 (telephone)
(609) 207-3767 (facsimile)

12

Daniel@danielmrosenberg.com
*Co-Counsel for Plaintiff*


THE KIM LAW FIRM, LLC
Richard H. Kim, Esquire
Attorney Identification No.:  010412005
911 Arch St., Suite 101
Philadelphia, Pa 19107
(855) 996-6342 (telephone)
(855) 235-5855 (facsimile)
rkim@thekimlawfirmllc.com
*Co-Counsel for Plaintiff*

13

## VERIFICATION



I, Richard Stanhope, hereby certify and say as follows:

1.    I am the Plaintiff in <u>Richard Stanhope v. Bank of America, N.A., et al.</u>

2.    I have personal knowledge of the facts alleged in the Amended Verified Complaint.

3.    The factual allegations of the Amended Verified Complaint are true to the best of my knowledge.

4.    All documents attached to the Amended Verified Complaint are, to the best of my knowledge, true copies and have not been changed, modified, adjusted or otherwise altered in any wrongful manner by me or my agents.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: ___5/15/15___

_____
Richard Stanhope

14