UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD STANHOPE,

               Plaintiff,

     v.

BANK OF AMERICA, N.A.,
DEBORAH CARTER FRAKE, HARRY
FRAKE, III,

               Defendants.

1:16-cv-02040-NLH-JS

**OPINION**

**APPEARANCES**:

DANIEL M. ROSENBERG
DANIEL M. ROSENBERG & ASSOCIATES, LLC
141 HIGH STREET
MOUNT HOLLY, NJ 08060

RICHARD HAN KIM
THE KIM LAW FIRM, LLC
1500 MARKET STREET
CENTRE SQUARE WEST TOWER
SUITE W-3110
PHILADELPHIA, PA 19102

     On behalf of plaintiff

**HILLMAN**, District Judge

     Presently before the Court is the motion of plaintiff,
Richard Stanhope, for default judgment against defendants,
Deborah Carter Frake and Harry Frake III, plaintiff's mother and
step-father, on his claim that they defrauded him out of
$300,000 through their unauthorized access of his bank accounts,
which contained settlement funds from an accident that had
rendered him paralyzed and blind.  For the reasons expressed

below, plaintiff's motion will be granted.

## DISCUSSION

### A.    Subject Matter Jurisdiction

When Bank of America removed plaintiff's complaint to this Court, the complaint contained both federal and state claims. Plaintiff had claimed, *inter alia*, that Bank of America violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., by failing to accommodate his disabilities with regard to his bank statements and account inquiries, which enabled the Frakes to steal most of plaintiff's money from his Bank of America savings and checking accounts.  As a result of plaintiff's claims under the ADA, this Court had jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

Plaintiff has settled his claims against Bank of America. As a result, the only remaining claim in the case – fraud against the Frakes - is based on state law.  Because plaintiff's claims against the Frakes arise out of the same set of facts as his claims against Bank of America, the Court has chosen to continue exercising its supplemental jurisdiction to resolve the remaining claim.  See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284-85 (3d Cir. 1993) (stating that as the statute makes clear, the decision to exercise supplemental

jurisdiction over remaining state law claims pursuant to 28 U.S.C. § 1367 is committed to the discretion of the district court); cf. 28 U.S.C. § 1441(c)(2) (providing that a claim not within the original or supplemental jurisdiction of the district court shall severed from the action and remanded).

### B.    Default

The first step in obtaining a default judgment is the entry of default.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default."  Fed. R. Civ. P. 55(a). The Clerk entered default against the Frakes on May 2, 2016.

### C.    Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading."  Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  A party seeking default judgment, however, is not entitled to a default judgment as of a right. Paniagua Group, Inc. v. Hospitality Specialists, LLC, --- F.3d ---, 2016 WL 1725934, at *5 (D.N.J. 2016).  The decision to enter a default judgment is "left primarily to the discretion of the district court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d

Cir. 1984).

Although every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted, Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a default judgment the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," Chanel, 558 F. Supp. 2d at 535.  "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment.

    **D.   Analysis**

        **1.   Whether plaintiff has stated a cause of action**

The following summarizes plaintiff's allegations and claims:

Plaintiff was struck by a motor vehicle on January 5, 2009, and sustained serious injuries, leaving him paralyzed and blind. Plaintiff filed a personal injury lawsuit relating to the

accident and received a settlement of approximately $343,000.00 (the "Settlement Funds").  The Settlement Funds were intended to assist plaintiff with living and medical costs throughout his lifetime, as he is currently twenty-seven years old.

The Frakes, plaintiff's mother and step-father, stole approximately $300,000 (and possibly more) of the Settlement Funds.  The Frakes took advantage of plaintiff's disabilities and stole his money through the use of plaintiff's Bank of America ATM/debit card to access plaintiff's money and shower themselves with lavish shopping sprees.  These fraudulent transactions occurred from October 2012 through December 2013. The Frakes were able to accomplish their theft of plaintiff's funds because he is blind and was unable to review his monthly bank statements.  He would ask his mother for his bank balance and she would lie.

Because Bank of America failed to reasonably accommodate plaintiff's disabilities by providing him with auxiliary aids to review, understand or use his bank account without the assistance of somebody without a disability,[1] plaintiff was unable to monitor his bank accounts, and he fell victim to the Frakes.

Specifically, plaintiff alleges in his complaint:

---

[1] As noted above, plaintiff has settled his claims against Bank of America.

33. Since receiving the Settlement Funds, the Frakes, Plaintiff's parents, have never had any meaningful employment.

34. The only known source of income for either of the Defendants is social security benefits received by Harry Frake, III ("H. Frake"), which is only a recent occurrence.

35. Since Mr. Stanhope received the Settlement Funds, or shortly thereafter, the Defendants have been fraudulently siphoning off funds from the BOA Account.

36. The Frakes' used the debit card (the "Debit Card") associated with the BOA Account to withdraw cash - sometimes up to $3,000.00/day - from various ATM machines.

37. The Debit Card was also used for shopping sprees at retailers such as BJ's Wholesale Club, Walmart and the Columbus Farmers' Market - to name a few. Sometimes, a thousand ($1,000.00) dollar a day would be spent at these vendors.

38. The Debit Card was held in trust by Mr. Stanhope's mother for very specific negligible uses - such as purchasing shampoo and soap, and paying household utilities since the parties shared the same residence.

39. Mr. Stanhope specifically gave his mother, D. Frake, permission in each instance for the use of the Debit Card for a specific limited purpose. In other words,

neither of the Frakes had carte blanche authority for the use of the Debit Card - far from it.

40. In or about February 2014, Mr. Stanhope discovered the wrongdoing by the Frakes, which resulted in the theft of approximately $300,000.00.

41. In total, Mr. Stanhope was only left in total with approximately $43,000.00 between the BOA Accounts.

(Compl. at 6-7, Docket No. 1-1 at 7-8.)

Plaintiff is seeking compensatory and punitive damages.[2]

In order to state a valid claim for fraud under New Jersey law, plaintiff must prove five elements: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Williams v. BASF Catalysts LLC, 765 F.3d 306, 317 (3d Cir. 2014) (quoting Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005)).

Accepting as true the facts alleged in plaintiff's complaint, plaintiff has demonstrated that the Frakes committed

---

[2] Plaintiff's complaint seeks other relief against the Frakes, including enjoining them from further access to plaintiff's accounts, and an appointment of a receiver. (Compl. at 9-10, Docket No. 1-1 at 10-11.) Plaintiff's motion for default judgment only seeks compensatory and punitive damages.

fraud.   The Frakes intentionally lied to plaintiff about his

bank balances – and used plaintiff's disabilities to their

benefit - in order to conceal their unauthorized use of his

debit card to steal over $300,000.00 from plaintiff.   Thus,

plaintiff has stated a valid claim for fraud against the Frakes.[3]

### 2.    Whether plaintiff is entitled to a default judgment

Now that is has been determined that plaintiff has stated a

viable claim for fraud, it must be determined whether plaintiff

is entitled to a default judgment.   As stated above, prior to

entering judgment on the counts where a valid cause of action

has been established, three factors must be considered: (1)

prejudice to the plaintiff if default judgment is not granted;

(2) whether the defendant has a meritorious defense; and (3)

---

[3] Plaintiff does not assert a claim against the Frakes for
"conspiracy to commit fraud," see Banco Popular N. Am. v. Gandi,
876 A.2d 253 (N.J. 2005) (explaining that under New Jersey law,
a civil conspiracy is "a combination of two or more persons
acting in concert to commit an unlawful act, or to commit a
lawful act by unlawful means, a principal element of which is to
inflict a wrong against or injury upon another, and an overt act
that results in damage"), but plaintiff's allegations are
asserted collectively against the Frakes.   Presumably this is
because it is difficult for plaintiff to know the specific,
individual actions taken by Deborah Frake and Harry Frake.   Had
the Frakes appeared in this action, they could have admitted or
denied each of plaintiff's allegations against them
individually.   Because plaintiff has alleged that the Frakes are
jointly and severally liable for plaintiff's damages resulting
from their fraudulent actions, the Court may enter judgment
against each of them.

whether the defendant's delay was the result of culpable misconduct.  Chamberlain, 210 F.3d at 164.

### a.    Prejudice to plaintiff

Plaintiff will be prejudiced absent a default judgment because the Frakes' failure to respond to plaintiff's claims leaves plaintiff with no other means to vindicate his claims against them.

### b.    Existence of meritorious defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869-70 (3d Cir. 1984); accord $55,518.05 in U.S. Currency, 728 F.2d at 195; Feliciano, 691 F.2d at 657; Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982).  Here, it is axiomatic that the Court cannot consider the Frakes' defenses because they have failed to respond to this action.  See Prudential Ins. Co. of America v. Taylor, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. 2009) ("[B]ecause Ms. Ducker has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses.").

### c.  Whether defendants' delay is the result of culpable conduct

The Frakes' delay appears to be the result of culpable conduct.  "Culpable conduct is dilatory behavior that is willful or in bad faith."  Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123 (3d Cir. 1983).  Plaintiff filed his complaint on December 5, 2014 in the Superior Court of New Jersey, Burlington County.  The initial complaint was served upon Deborah Carter-Frake and Harry Frake III on December 8, 2014.  The initial complaint was subsequently amended twice and served upon the Frakes via first-class mail, in accordance with the New Jersey Rules of Court.  The Frakes never responded to the Complaint or any amendments thereto.

The third amended complaint was filed with the Superior Court of New Jersey on March 18, 2016, and served upon the Frakes via first-class mail on March 21, 2016.  A Notice of Removal to the United States District Court, District of New Jersey, was filed by Defendant Bank of America, N.A., on April 13, 2016.  Defendant Bank of America, N.A. served the Frakes with the Notice of Removal on April 13, 2016.  The Frakes failed to respond to the Amended Complaint within the time prescribed by Federal Rule of Civil Procedure 81(c)(2).  On April 29, 2016, plaintiff served on the Frakes via first-class mail a copy of his application for entry of default.

The Frakes were personally served with the initial complaint, and were sent five subsequent notices concerning plaintiff's claims against them, yet they have never appeared in either state court or in this Court.  This constitutes willful dilatory behavior.

Consequently, because the Court has found that plaintiff shall be prejudiced if default judgment is not granted, the Frakes do not have a meritorious defense, and the Frakes' failure to appear in this case is the result of their culpable misconduct, judgment shall be entered in plaintiff's favor on his fraud claim.

### 3.   Damages

In order to determine what damages plaintiff is entitled to for his judgment against the Frakes, the Court may "conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2); cf. Fed. R. Civ. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."); Jonestown Bank and Trust Co. v. Automated

<u>Teller Mach., Services, Inc.</u>,  2012 WL 6043624, *4 (M.D. Pa. 2012) (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010) ("[T]he 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue.")).

Here, plaintiff seeks compensatory damages and punitive damages.  With regard to compensatory damages, plaintiff has provided bank statements that reflect the unauthorized debits, totaling $309,137.26 in unauthorized transactions, and $1,041.46 in ATM service fees charged by Bank of America relating to the unauthorized transactions.  The sum total of the unauthorized charges and service fees caused by the Frakes is $310,178.62. Plaintiff is entitled to judgment in that amount in compensatory damages for the Frakes' fraud.

With regard to punitive damages, plaintiff has asked for $90,000.00 in punitive damages, which is 29% of the amount of money that the Frakes stole.  Plaintiff notes that he is not seeking attorneys' fees and costs, which have exceeded $100,000.

Punitive damages are a limited remedy and must be reserved for "cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages." <u>Cochetti v. Desmond</u>, 572 F.2d 102, 106 (3d Cir. 1978).  "Fraud, standing alone, without some additional aggravating element,

will not sustain a claim for punitive damages." Lo Bosco v.

Kure Engineering Ltd., 891 F. Supp. 1020, 1034 (D.N.J. 1995)

(citation omitted).  Punitive damages are available under New

Jersey law for fraud claims only if the plaintiff demonstrates

that the defendant acted with the level of culpability required

by the New Jersey Punitive Damages Act (NJPDA), N.J.S.A. 2A:15-

5.09, et. seq.  Vibra-Tech Engineers, Inc. v. Kavalek, 849 F.

Supp. 2d 462, 499-500 (D.N.J. 2012).

Under the NJPDA, to recover punitive damages, the plaintiff

must demonstrate "by clear and convincing evidence, that the

harm suffered was the result of the defendant's acts or

omissions, and such acts or omissions were actuated by actual

malice or accompanied by a wanton and willful disregard of

persons who foreseeably might be harmed by those acts or

omissions.  This burden of proof may not be satisfied by proof

of any degree of negligence including gross negligence."

N.J.S.A. 2A:15-5.12(a).  The NJPDA defines actual malice as "an

intentional wrongdoing in the sense of an evil-minded act."  Id.

at 5.10.  It defines "wanton and willful disregard" as a

"deliberate act or omission with knowledge of a high degree of

probability of harm to another and reckless indifference to the

consequences of such act or omission."  Id.

The NJPDA also provides a list of types of evidence that

the trier of fact must consider in determining whether punitive

13

damages should be granted, including: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant."  N.J.S.A. 2A:15-5.12.

Accepting as true plaintiff's factual allegations, as the Court must as a result of the Frakes' refusal to appear in this action, "evil-minded" is a fitting description for the Frakes' conduct.  A young man was blinded and paralyzed in an accident and received a modest sum to support him for the rest of his life.  Over the course of an entire year, his mother and step-father, to whom he afforded limited access to his accounts due to his disabilities, stole most of his money to buy themselves "lavish" items, and lied to him about it.

In sum, the Frakes' actions are the epitome of actual malice, with wanton and willful disregard that a person – their son – would be harmed.  In this Court's view, the imposition of punitive damages in the amount that is the functional equivalent of an attorney's contingency fee arrangement is a proper, proportional, and measured award in this case.  The amount sought ($90,000) is based on a percentage (29%) that is

14

consistent with the rules governing the reasonableness of such fees, see N.J. Ct. R. 1:21-7(c) ("[An attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits: (1) 33 1/3 % on the first $750,000 recovered . . . .); and is consistent with other types of monetary awards intended to compensate plaintiffs for intentional and wrongful conduct of defendants. See also In re Estate of Lash, 776 A.2d 765, 769 (N.J. 2001) ("[I]f a plaintiff has been forced because of the wrongful conduct of a tortfeasor to institute litigation against a third party, the plaintiff can recover the fees incurred in that litigation from the tortfeasor.  Those fees are merely a portion of the damages the plaintiff suffered at the hands of the tortfeasor."); Bruck v. Gorman, 2015 WL 9459920, at *7 (D.N.J. 2015) (entering default judgment against defendants on plaintiff's common law fraud claim, and awarding plaintiff compensatory damages and attorney's fees).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment against defendants Deborah Carter Frake and Harry Frake III must be granted.  An appropriate Order and Judgment will be entered.

Date:  __November 9, 2016__          __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.